EDWARD DUMAY *vs.* MIGUEL J. SANCHEZ, and A. FRANK
GIBSON, co-partners, trading as SANCHEZ & GIBSON.
WILLIAM S. BRYAN, JR., Trustee *vs.* Same.

*Attachment—Affidavit—Appeal—Record.*

Section 35 of Article 9 of the Code, provides that the affidavit
upon which an attachment may issue, shall state "that the
plaintiff knows, or has good reason to believe, either (1st) that
the debtor is about to abscond from this State, or (2nd) that the
defendant has assigned, disposed of, or concealed, or is about to
assign, dispose of, or conceal his property, or some portion
thereof, with intent to defraud his creditors, or (3rd) that the
defendant fraudulently contracted the debt, or incurred the obliga-
tion respecting which the action is brought, or (4th) that the
defendant has removed, or is about to remove, his property, or
some portion thereof, out of this State, with the intent to defraud
his creditors." HELD:

That an attachment obtained on an affidavit that alleged the first
and second conditions prescribed in the statute will be quashed,
where there is no sufficient evidence to support such allegations,
although there is strong evidence in support of the third condition
mentioned in the statute.

The insertion in the record on appeal, without apparent authority,
or at least any official anthentication whatever, of the whole
mass of testimony taken at the trial, when every material or
relevant fact or circumstance to be gathered from it, could have
been well stated in a bill of exception, is objectionable, and the
appellants, though they may obtain a reversal of the judgment
appealed from, will be required to pay the cost of printing such
testimony inserted by their order.

APPEALS from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE,
MILLER, and MCSHERRY, J.

*William S. Bryan, Jr.*, for the appellants.

*Thomas Ireland Elliott*, for the appellees.

ALVEY, C. J., delivered the opinion of the Court.

The plaintiffs, the present appellees, sued out an attachment on original process against the defendant Dumay, under the provisions contained in sections 35, 36, 37 and 38, of Art. 9 of the Code; and under which attachment certain personal effects of the defendant were seized by the sheriff. The claim of the plaintiffs consists of three promissory notes; the first dated the 27th of Nov. 1888, and the other two the 30th of Jan. 1889. The attachment was issued on the 3d of April, 1889, and on the next day thereafter the defendant made a general assignment of all his property for the benefit of all his creditors, without priority or preference, to W. S. Bryan, Jr., an appellant in one of the appeals in the record now before us.

On the same day of the making of the assignment by Dumay, motions were made, both by Dumay, the defendant, and Bryan, the assignee, for the return forthwith of the attachment, and that the same be quashed, 1st. because the affidavit upon which the attachment was issued, was false in stating that the defendant Dumay was about to *abscond* from the State; and 2nd, because such affidavit was false in stating that Dumay was about *fraudulently* to dispose of his property. On these motions an order was passed requiring the return of the attachment, and fixing a day for hearing the motions. The attachment was returned, and the motions were heard; and the Court thereupon overruled the motions to quash, and entered judgment of condemnation of the property seized. There were other motions made in the cause, but it is not material that they be considered here. From the order overruling the motion to quash and from

510          MARYLAND REPORTS.

Dumay *vs.* Sanchez and Gibson.   Bryan *vs.* Same.

the judgment of condemnation, the defendant Dumay, and the assignee Bryan, entered their several appeals.

Section 35 of Art. 9 of the Code, already referred to, in prescribing the conditions upon which an attachment under that statute may issue, provides that the affidavit shall state "that the plaintiff *knows*, or has *good reason to believe*, either (1st,) that the debtor is about to *abscond* from this State; or (2nd) that the defendant *has assigned, disposed of, or concealed, or is about to assign, dispose of, or conceal* his property, or some portion thereof, *with intent to defraud his creditors;* or (3rd) that the defendant *fraudulently contracted the debt*, or incurred the obligation respecting which the action is brought; or (4th) that the defendant *has removed, or is about to remove* his property, or some portion thereof, *out of this State, with intent to defraud his creditors."*

The existence of some one at least of these conditions is essential to the validity of the attachment proceedings, under this particular statute; and unless the affidavit states some one or more of such conditions, as the foundation of the attachment, it cannot be sustained.

The affidavit in this case, made by Gibson, one of the plaintiffs, states as the ground for the attachment, "that the said plaintiffs have *good reason to believe:* 1st. That the said Edward Dumay is about to *abscond from this State;* and 2nd. That the said Edward Dumay *has assigned, disposed of, or concealed, or is about to assign, dispose of, or conceal,* his property, or some portion thereof, *with intent to defraud his creditors."* These allegations are jurisdictional, and, as we have seen, they have been traversed, and charged to be false in fact, as well by the defendant as by the assignee, who claims the property seized under the attachment.

In the case of *Barr vs. Perry*, 3 *Gill*, 313, it was held by the Court of Appeals, that neither the defendant nor the garnishee could be concluded by the affidavit of the

plaintiff, as to any jurisdictional fact, necessary to appear in the affidavit, as the foundation of the attachment. That the truth of such facts could be put in issue either by plea or by motion to dissolve; and, in the same case, it was said by the Court, quoting the language of a Court of a sister State, that the parties who issue the attachment are bound to support it, when it is attacked. *Boyes, et al. vs. Coppinger,* 2 *Yeates,* 277. The same principle has been laid down by other Courts, as the settled law in such cases. *Genesee Sav. Bank vs. Mich. Barge Co.,* 52 *Mich.,* 162; *Wade on Attach.,* sec. 281.

The case appears to have been tried below upon the oral examination of witnesses before the Court; but the testimony is presented to this Court in a most irregular and unauthorized manner; though it seems to be by the consent of counsel for the appellees. On page 7 of the record, after the order to enter the appeals, we find this entry made by the clerk: "Papers inserted in record *by order of the appellant;*" and then follows what purports to be the testimony taken at the trial, but which is in no manner authenticated by the Court, as in form of a bill of exception properly framed, (the regular and formal mode of presenting facts proved at the trial below to the appellate Court, on an appeal from a Court of common law,) nor even in form of depositions authorized to be taken and used at the trial, and authenticated in the usual manner of taking evidence in such form. But the whole mass, as we may suppose it to have been reported by a stenographer with all its irrelevancies, consisting of questions and answers, dialogues, and digressions, and repetitions without limit, has been inserted into the record, without apparent authority, or any the least official authentication to this Court whatever. It may be safely stated that of the whole testimony taken, every material or relevant fact or circumstance to be gathered from it, could have been well

512 MARYLAND REPORTS.

Dumay *vs.* Sanchez and Gibson. Bryan *vs.* Same.

stated in a bill of exception that would not have covered more than two or three pages of the printed record; and yet we find seventy odd pages of the printed record occupied with what is denominated testimony. This may be a very labor saving method of getting a case before the Court of Appeals; but it is a very onerous one to suitors who have to pay for the transcript and the printing of the record. It would be to no purpose, indeed quite useless, that the Constitution of the State should require this Court to make rules to abbreviate records, and to curtail costs to suitors in the Court, if any such method as the present, for making up the records for this Court, could be sanctioned. Our object in remarking upon the manner of making up the present record is simply to admonish the members of the bar that we cannot approve any such method; and that we will and must insist that records brought into this Court shall be prepared and made up according to rule and established practice.

The practice in this State is well settled as to the manner of presenting cases on appeal from rulings on summary motions to quash, or to set aside process. As in all other cases where extrinsic evidence is introduced at the trial, the facts must be properly presented to this Court in some authenticated form; and the mode of presenting them is either by bill of exception, as in *Campbell vs. Morris,* 3 *H. & McH.,* 535; *Nesbitt vs. Dallam,* 7 *G. & J.,* 494; or by agreed statement of facts; or by depositions, taken under the authority of the Court and reduced to form, and authenticated, and filed in the cause; as in the cases of *Baldwin vs. Wright, et al.,* 3 *Gill,* 241; *Moreland vs. Bowling,* 3 *Gill,* 500; and *Howard, et al. vs. Oppenheimer,* 25 *Md.,* 350. The record proper does not embrace anything, in the way of extrinsic evidence or proof produced on the trial, and therefore cannot be produced to this Court, unless it be made part of

the record by bill of exception, agreed statement of facts, special verdict, or such depositions as may be authorised to be taken and filed in proper form, as means of proof. *Nesbitt vs. Dallam,* 7 *G. & J.,* 494; *Balto. & Poto. R. R. Co. vs. Trustees, &c.,* 91 *U. S.,* 127, 132.

However, (without intending to allow this case to pass into a precedent,) in view of the fact that the counsel for both parties have argued the case upon the facts, and treated the evidence as being before us, we have carefully examined what purports to be the report of the evidence, set out in the transcript sent up, but entirely fail to find in it any sufficient evidence to support either of the two jurisdictional allegations in the affidavit upon which the attachment was founded. There is literally nothing to support the allegation that the defendant was in fact about to abscond from the State. The only thing Mr. Gibson, the party who made the affidavit, can say in support of the allegation is, that while he, the witness, "didn't know the defendant was going to run away, he thought him capable of anything." And in answer to another question he said, he thought he might run away, because he, the witness, had heard that the defendant was taking stock. And in regard to the second ground alleged in the affidavit, that is, that the defendant had assigned, disposed of, or concealed, or was about to assign, dispose of or conceal, his property, or some part thereof, with intent to defraud his creditors, the evidence is altogether too slight and inconclusive to found a rational judgment upon. The fact that the deed of assignment for the benefit of creditors generally was made the day after the attachment was issued, can certainly furnish no evidence in support of the allegation; and while it is true that the defendant made a great many false statements and representations as to the amount of his debts and his ability to pay them, and made a great many promises that he may have known he

33

never could redeem, or even never intended to redeem, yet these circumstances reflect but slightly upon the allegation of fraudulent concealment or disposition of his property. The disparity, as it ultimately appeared, between the amount of his assets and the amount of his debts, may be accounted for without concluding that he had concealed or disposed of his property for the purpose of cheating his creditors. There is no direct evidence whatever pointing to any such concealment or disposition of property; and, in the absence of clear and satisfactory evidence, no presumption of the fact should be indulged.

If the affidavit had alleged the third condition mentioned in the statute, that is, that the defendant fraudulently contracted the debt sued for, the testimony of Mr. Sanchez, one of the plaintiffs, would have furnished strong evidence in support of that allegation. According to his testimony credit for part of the debt, at least, was obtained by the defendant by false and deceptive representations as to his financial condition and prospects and his ability to pay as the notes matured; but that allegation is not found in the affidavit, and consequently the attachment cannot be supported by such evidence. In other words, the attachment was not founded upon the charge that the debt was fraudulently contracted by the defendant; but upon the two specific charges that we have referred to. According to the view we take of the subject, the Court below should have sustained the motion to quash the attachment, and should not, therefore, have entered judgment of condemnation. But with respect to the costs in this Court, we order and direct that the appellants pay the cost of printing the testimony inserted in the transcript by their order. Code, Art 5, sec. 13.

*Judgment reversed.*